IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICIA J. DAVIS, an Individual, and PATRICIA A. DUNCAN, an Individual, | ) ) ) | CASE NO. 8:11CV221 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| J. JOE RICKETTS, an Individual, HUGO ENTERPRISES, LLC, f/k/a RICKETTS ENTERPRISES, LLC, a Nebraska Limited Liability Company, OPPORTUNITY EDUCATION FOUNDATION, an Iowa Non-Profit Corporation, and ADP TOTALSOURCE, INC., a Florida Corporation, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion to Dismiss (Filing No. 12) submitted by Defendants J. Joe Ricketts ("Ricketts"), Hugo Enterprises, LLC ("Hugo Enterprises"), and Opportunity Education Foundation (the "Foundation"). For the reasons discussed below, the Plaintiffs' claim against Ricketts will be dismissed, and the Motion otherwise will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ricketts, Hugo Enterprises, and the Foundation have moved to dismiss the Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and have submitted an index of evidence (Filing No. 14) in support of their Motion. Plaintiffs Patricia J. Davis ("Davis") and Patricia A. Duncan ("Duncan") also submitted an index of evidence (Filing No. 23) in opposition to the Motion. After reviewing the evidentiary materials, the Court has determined that it would be premature to convert the Motion to one for summary judgment under Fed. R. Civ. P. 12(d), and the evidentiary

materials must be excluded from consideration in connection with the pending motion. Accordingly, the well-pled factual allegations in the Complaint (Filing No. 1) are accepted as true for purposes of the pending Motion, although the Court need not accept the Plaintiffs' legal conclusions. The following is a summary of the Plaintiffs' allegations.

At all relevant times, Ricketts was the founder, benefactor, and Chief Executive Officer of the Foundation and served on its Board of Directors. Ricketts was also the owner and managing member of Hugo Enterprises, a holding company that administered his various businesses and ventures, including the Foundation. Defendant ADP TotalSource, Inc. ("ADP") was a professional human resource management firm that entered into a contractual relationship with Hugo Enterprises and the Foundation through which ADP, Hugo Enterprises, and the Foundation became joint employers of employees working for the Foundation, including Davis and Duncan.

During the relevant time, Duncan was supervised by Davis, and Davis was supervised by the Foundation's Chief Operating Officer, Michael Morsches, who subjected Davis and Duncan to a hostile work environment. In mid-August 2009, Davis and Duncan reported the alleged sexual harassment to the Foundation's Executive Director, Alan Barkley, and Barkley reported the complaints to the Chief of Staff and head of Human Resources of Hugo Enterprises. The President and General Counsel of Hugo Enterprises contacted Davis and Duncan and asked them to put their complaints in writing, and they responded by sending him written summaries of their complaints.

On August 31, 2009, Ricketts told Duncan that her services were no longer needed. On September 1, 2009, Ricketts interviewed Davis about her allegations of sexual harassment, and met with her again on September 4, 2009, to tell her that Morsches

denied the allegations and she must get along with Morsches. The alleged harassment by Morsches escalated, and on November 12, 2009, Davis reported it to ADP. On November 16, 2009, Ricketts told Davis to cancel her business-related travel and engagements and to report to him for a meeting on November 18, 2009. At that meeting, Ricketts told Davis and Morsches that due to Davis's allegations of sexual harassment both of them were placed on paid administrative leave pending investigation. On December 16, 2009, Davis received word from the Foundation's lawyer that her services were terminated. On December 17, 2009, Davis received notice from the President and General Counsel of Hugo Enterprises that the Foundation had decided to terminate her employment, and her employment was terminated effective December 31, 2009. Although Ricketts announced in mid-December 2009 that both Davis and Morsches had been terminated, Ricketts rehired Morsches within days.

Davis and Duncan timely filed administrative charges of sex discrimination and retaliation against ADP, Hugo Enterprises, and the Foundation. On December 14, 2010, while the administrative investigation of the charges was pending, Davis's son Jeff Goergen, an employee of the Foundation, was terminated without cause. On January 12, 2011, Davis filed another administrative charge against Hugo Enterprises and the Foundation, alleging retaliation based on her son's termination. Davis and Duncan exhausted their administrative remedies on all claims; received their right-to-sue letters from the Nebraska Equal Opportunity Commission ("NEOC") on March 18, 2011; and filed this action on June 20, 2011.

The Plaintiffs' Complaint presents seven claims. Claim I asserts that Hugo Enterprises, the Foundation, and ADP subjected the Plaintiffs to a hostile work

3

environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Claim II asserts that these three Defendants retaliated against the Plaintiffs in violation of VII by perpetuating the hostile work environment and by terminating them. Count III asserts that these three Defendants retaliated against Davis by terminating her son's employment in violation of Title VII. Count IV asserts that these three Defendants subjected the Plaintiffs to a hostile work environment in violation of the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1102(2) ("NFEPA"). Count V asserts that these three Defendants retaliated against the Plaintiffs in violation of NFEPA. Count VI asserts that these three Defendants retaliated against Davis by terminating her son's employment in violation of NFEPA. Count VII asserts that Ricketts tortiously interfered with Plaintiffs' expectation of continued employment in violation of Nebraska common law.

ADP answered the Complaint (Filing No. 16), and Ricketts, Hugo Enterprises, and the Foundation moved to dismiss the claims against them under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

4

Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id*. at 556.

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

### I. Plaintiffs' Common Law Action Against Ricketts Fails

Plaintiffs have not brought Title VII or NFEPA claims against Ricketts, nor could they do so. See *Bonomolo-Hagen v. Clay Central-Everly Community Sch. Dist.*, 121 F.3d 446,

5

447 (8th Cir. 1997) ("Our Court . . . has squarely held that supervisors may not be held individually liable under Title VII."); and *Holmes v. Archer Daniels Midland Co.* 724 F.Supp.2d 1050, 1059 (D.Neb. 2010) ("In construing the NFEPA, Nebraska courts have looked to federal decisions, because the NFEPA is patterned after Title VII," citing *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir.2002)). Instead, Plaintiffs have brought a common law action against Ricketts for tortious interference with their expectation of continued employment.

Looking to the law of the forum state, the Plaintiffs must prove "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interferences cause the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Recio v. Evers*, 771 N.W.2d 121, 131 (Neb. 2009).

Defendants seek to dismiss Plaintiffs' common law action against Ricketts, noting that the only facts presented in support of the claim are the same facts supporting the Plaintiffs' Title VII and NFEPA claims, and that Ricketts was at all times acting in the scope of his authority as CEO of the Foundation and managing member of Hugo Enterprises, which Plaintiffs consider an "integrated entity." Defendants contend that, based on the allegations in the Complaint, Ricketts was acting as an agent of the employer and not as a third party, so he could not have "interfered" with the Plaintiffs' relationship with the employer.

The Nebraska Supreme Court has held that a supervisor or co-employee may become a "third person" subject to liability for tortious interference with a plaintiff's

6

expectation of continued employment if such person's actions were committed in furtherance of some purpose other than the lawful purposes of the employer. *Huff v. Swartz*. 606 N.W.2d 461, 468 (Neb. 2000). In their Complaint, Plaintiffs allege that "Ricketts' interference was done solely with malice and/or in his own personal interest and not for any lawful purpose of Plaintiffs' employers." (Complaint, Filing No. 1 at ¶ 119.) In their brief in opposition to Defendants' Motion to Dismiss, Plaintiffs contend that "Ricketts was angry; he wanted to get rid of plaintiffs because they had submitted complaints against Mr. Morsches and because Ms. Davis had questioned Mr. Ricketts' handling of their complaints; and he disapproved of Ms. Davis' views of 'his objectives' (not Opportunity Education's objectives)." (Filing No. 22 at 18.)

This Court concludes that Plaintiffs have failed to state a claim against Ricketts upon which relief can be granted. First, the allegations against Ricketts are conclusory and "a formulaic recitation of the elements of a cause of action." Second, while a claim for tortious interference with an employment relationship may lie against a co-worker or supervisor acting outside the scope of agency with the employer, the Plaintiffs have not referred the Court to any case where a successful action on such a claim was brought against the employer's chief executive officer, nor has this Court found such a case. A suggestion that the person who exercises an employer's ultimate executive authority is *not* acting as an agent of the employer is far less plausible than a claim that a co-employee or supervisor is acting outside the scope of employment. Finally, if the Court were to permit the Plaintiffs' action against Ricketts to proceed, it would undermine precedent holding that supervisors are not individually liable under Title VII, because any plaintiff could sue any supervisor based on allegations supporting a Title VII claim and assert that the supervisor

interfered with the plaintiff's expectation of continued employment by acting in a manner in furtherance of some purpose other than the *lawful* purposes of the employer.

Accordingly, the Plaintiffs' claim against Ricketts will be dismissed.

## II. Plaintiffs' Title VII and NFEPA Claims Survive Defendants' Motion to Dismiss

### A. The Complaint Alleges the Requisite Number of Employees

Defendants suggest that Plaintiffs' Title VII and NFEPA claims against the Foundation should be dismissed, because the Complaint does not allege that the Foundation has fifteen or more employees, and because the Foundation in fact does not have fifteen or more employees. See 42 U.S.C. § 2000e(b); Neb. Rev. Stat. § 48-1102(2).

As Plaintiffs note, the requirement that a defendant employer have fifteen or more employees is not jurisdictional, but is an element of a plaintiff's cause of action. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006). Plaintiffs attached to their Complaint a copy of their NEOC charges, in which they allege that the Foundation has between fifteen and one hundred employees. (Filing No. 1-1.) "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

As noted above, this Court is not considering the parties evidentiary submissions at this time, and for purposes of the pending Motion to Dismiss, the Complaint adequately alleges the requisite number of employees.

### B. The Complaint Alleges Facts From Which It Can Be Inferred that the Foundation and Hugo Enterprises Were an Integrated Entity

Defendants contend that the Plaintiffs' claims against Hugo Enterprises should be dismissed, because it was not their employer. Plaintiffs assert that the Foundation and Hugo Enterprises were an integrated employer for purposes of Title VII and NFEPA. Specifically, the Complaint alleges that the two entities have common ownership and

management, that Hugo Enterprises was responsible for the business administration of the Foundation, and that the personnel actions at issue in this case were effected by officers and agents of Hugo Enterprises.

In *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir. 1977), the Eighth Circuit held that several factors should be considered when determining whether entities should be considered a consolidated employer for purposes of Title VII: Interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. Although there is a strong presumption of corporate separateness, that presumption may be overcome if (1) "the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer," or (2) "the parent company is linked to the alleged discriminatory action because it controls 'individual employment decisions.'" *Brown v. Fred's Inc.*, 494 F.3d 736, 739 (8th Cir. 2007). The *Baker* four-part test is used to determine general parental domination standard set forth in *Brown*. *Sandoval v. American Bldg. Maintenance Indus., Inc.*, 578 F.3d 787, 796 (8th Cir. 2009).

There are sufficient factual allegations in Plaintiffs' Complaint to make plausible their claim that the Foundation and Hugo Enterprises were an integrated employer for purposes of Title VII and NFEPA.

### C. The Complaint Alleges that Duncan Was a Part-Time Employee of Defendants ADP and the Foundation, as Co-Employers

Defendants contend that Duncan's claims should be dismissed because she was an independent contractor and not an employee, and Title VII and NFEPA apply only to claims of employees, not independent contractors. See *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 483 (8th Cir. 2000). Defendants argue that Duncan

acknowledged her independent contractor status in a consulting agreement. Plaintiffs allege in their Complaint that Duncan was a part-time employee of the Defendants, working as Sister Schools Coordinator of the Foundation. (Complaint, Filing No. 1, ¶ 9.)

In *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir 2010), the Eighth Circuit considered how the general principles of *Twombly* and *Iqbal* apply to the recurring common law issue of "whether an individual was an employee or an independent contractor at the time in question." 621 F.3d at 818. It stated that the question is one of fact and that "[c]ommon sense and judicial experience counsel that pleading this issue does not require great detail or recitation of all potentially relevant facts in order to put the defendant on notice of a plausible claim." *Id.* at 819. Accordingly, Duncan's claim will not be dismissed on the basis that she was an independent contractor. That question remains to be determined on summary judgment or at trial.

### D. Davis's Retaliation Claims Based on her Son's Termination State Claims upon which Relief Can be Granted

Defendants contend that Davis's claim of retaliation based on her son's termination cannot survive, because her son's termination was not an adverse action against Davis.

In *Thompson v. North American Stainless, LP.*, 131 S. Ct. 863 (2011), the plaintiff brought a Title VII action against his former employer for retaliation, alleging that he was terminated after his fiancee, who worked for the same employer, filed a sex discrimination charge. The Supreme Court held that the plaintiff was an aggrieved person with a viable action under Title VII. Although the plaintiff in *Thompson* was the one who suffered the adverse employment action, the Supreme Court said that "'the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id*. at 868, quoting *Burlington N. & S.F.R. Co. v. White*,

548 U.S. 53, 64 (2006). "Rather, Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*., quoting *Burlington*, 548 U.S. at 68. The Supreme Court noted that "the more difficult question" in the case was whether the plaintiff could bring the action, rather than the fiancee who had made the sex discrimination claim presenting the retaliation action herself. *Id*. at 869. The Court concluded that Thompson, and not just his fiancee, was aggrieved and could sue. "[I]njuring him was the employer's intended means of harming [his fiancee]. Hurting him was the unlawful act by which the employer punished her." *Id*. at 870.

The facts alleged by Davis do not pose "the more difficult question" presented in *Thomson*. According to the Complaint, Davis made charges of discrimination and while her charges were still pending investigation by the NEOC, the Defendants terminated her son's employment without cause and in retaliation for her exercise of rights under Title VII and/or NFEPA. If proved, these allegations support a claim of retaliation, because the termination of a son's employment was an action that well might have dissuaded a reasonable worker from making or pursuing a charge of discrimination.

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss (Filing No. 12) submitted by Defendants J. Joe Ricketts, Hugo Enterprises, LLC, and Opportunity Education Foundation is granted in part, as follows:

    The Plaintiffs' claim against Defendant J. Joe Ricketts (Count VII of the Complaint) is dismissed, and

The Motion is otherwise denied;

2. The Clerk will remove the name of Defendant J. Joe Ricketts from the caption of this case; and

3. Defendants Hugo Enterprises, LLC, and Opportunity Education Foundation will respond to the remaining counts of the Plaintiffs' Complaint on or before November 28, 2011.

. DATED this 14th day of November, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge