IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICIA J. DAVIS, an Individual, JEFFREY J. GOERGEN, an Individual, and PATRICIA A. DUNCAN, an Individual, | ) ) ) ) ) ) | CASE NO. 8:11CV221 |
| Plaintiffs, | ) ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| HUGO ENTERPRISES, LLC, f/k/a RICKETTS ENTERPRISES, LLC, a Nebraska Limited Liability Company, and OPPORTUNITY EDUCATION FOUNDATION, an Iowa Non-Profit Corporation. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 102) submitted by Defendant Opportunity Education Foundation (the "Foundation") and Defendant Hugo Enterprises, LLC ("Hugo Enterprises"); the Motion for Partial Summary Judgment (Filing No. 105) submitted by Plaintiffs Patricia J. Davis ("Davis"), Patricia A. Duncan ("Duncan"), and Jeffrey Goergen ("Goergen") on the issue of whether Duncan and Goergen were employees of the Foundation or independent contractors; the Motions in Limine (Filing No. 141) submitted by the Foundation and Hugo Enterprises; the Plaintiffs' Motion in Limine to Exclude Testimony and other Evidence Regarding Matters Defendants Claimed are Protected by the Attorney-Client Privilege & Work Product Doctrine (Filing No. 148); the Plaintiffs' Motion in Limine to Exclude Testimony and Other Evidence Regarding Unemployment Benefits and Moonlighting Income (Filing No. 151); the Plaintiffs' Motion

in Limine to Exclude Evidence Regarding Bankruptcy and Criminal Charges (Filing No. 154); the Plaintiffs' Motion in Limine to Exclude Irrelevant Communications Regarding Plaintiff Patricia Davis' Diary (Filing No. 157); and Plaintiffs' Motion in Limine to Exclude Witnesses Pursuant to F.R.E. 615 (Filing No. 159).

Because the Foundation at all times had fewer than fifteen employees, and because the Court concludes that the Foundation and Hugo Enterprises were not joint, consolidated, or integrated employers, the Defendants' Motion for Summary Judgment will be granted, and the remaining motions will be denied as moot.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir 2011). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

2

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.) (quoting *Matsushita*, 475 U.S. at 586-87)), *cert. denied,* 132 S. Ct. 513 (2011). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## PROCEDURAL HISTORY

The Plaintiffs' Amended Complaint (Filing No. 38) presents six claims.[1]  Claim I

---

[1] In August 2011, the Defendants moved to dismiss the Plaintiffs' original Complaint, asserting that each Plaintiff worked for the Foundation, either as an employee or as an independent contractor, and that the Foundation at all times had fewer than fifteen

3

asserts that the Defendants subjected Davis and Duncan to a hostile work environment and *quid pro quo* sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Claim II asserts that the Defendants retaliated against Davis and Duncan in violation of Title VII by perpetuating the hostile work environment and by terminating them. Claim III asserts that the Defendants retaliated against Davis and Goergen (Davis's son) by terminating Goergen's employment in violation of Title VII. Count IV asserts that the Defendants subjected Davis and Duncan to a hostile work environment in violation of the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1102(2) ("NFEPA"). Count V asserts that the Defendants retaliated against Davis and Duncan, in violation of NFEPA, by perpetuating a hostile work environment and terminating their employment. Count VI asserts that the Defendants retaliated against Davis and Goergen in violation of NFEPA, by terminating Goergen's employment.

In their Amended Complaint, the Plaintiffs also named as a Defendant ADP TotalSource, Inc. ("ADP"), a Florida corporation, alleging:

> Upon information and belief, ADP TotalSource and Opportunity Education and/or Hugo Enterprises entered into a contractual relationship whereby ADP TotalSource and Opportunity Education became co-employers/joint employers of Plaintiffs and the other employees working for Opportunity Education, and ADP TotalSource contractually assumed various employment responsibilities and risks including the handling of employees' wrongful employment practices complaints.

(Am. Compl., Filing No. 38 at ¶ 14.)

Although the Amended Complaint alleged that "[the Foundation], Hugo Enterprises

---

employees and was not an "employer" under Title VII or NFEPA. In November 2011, this Court denied the Defendants' Motion to Dismiss, and declined to consider evidentiary materials outside the pleadings and convert the motion to one for summary judgment, instead allowing discovery to proceed. (See Mem. & Order, Filing No. 25.)

4

and ADP TotalSource are coemployers/joint employers for purposes of Title VII and the NFEPA" (*id*. at ¶ 20), the Plaintiffs later moved to dismiss ADP as a party defendant in this case. All claims against ADP were dismissed, with prejudice, on January 2, 2013. (Order, Filing No. 94.) The Amended Complaint further alleged that Hugo Enterprises and the Foundation are "an integrated employer" for purposes of Title VII and the NFEPA. (Filing No. 38 at ¶ 19.)

Discovery is now complete and the Foundation and Hugo Enterprises have moved for summary judgment, asserting that (1) the Foundation did not have fifteen or more employees, a prerequisite to liability under both Title VII and NFEPA, and the Foundation and Hugo Enterprises were not joint or integrated employers such that their employees can be grouped for purposes of Title VII and NFEPA; (2) Duncan and Goergen were independent contractors, not employees, and therefore not covered by Title VII and NFEPA protections; (3) the alleged sexual harassment of Duncan and Davis ended once they brought their concerns to the attention of the Foundation's management; (4) the alleged harassment suffered by Duncan and Davis was not severe or pervasive, and (5) the Foundation's decision to terminate Davis's employment and to end Duncan's and Goergen's service contracts were business decisions and not retaliatory.

While genuine issues of fact may remain regarding the Defendants' last four assertions, the Court concludes that summary judgment for the Defendants is warranted. The undisputed facts demonstrate that the Foundation at all times had fewer than fifteen employees; and, based on undisputed facts, this Court finds as a matter of law that the Foundation and Hugo Enterprises were not a joint, consolidated, or integrated employer such that their employees may be grouped for purposes of Title VII and NFEPA.

## FACTS

The Defendants' Statement of Undisputed Material Facts (Filing No. 111-1 at 1-55), with pinpoint citations to the evidentiary record in compliance with NECivR 56.1(a)(2), and Plaintiffs' responses (Filing No. 130 at 93-132), submitted in compliance with NECivR 56.1(b)(1), reveal that the following material facts are not in dispute.[2]

The Foundation is a non-profit, tax-exempt corporation with its principal place of business in Omaha, Nebraska. It provides educational support and materials to teachers in more than 1,000 schools, serving more than 500,000 children, in developing countries. Joe Ricketts ("Ricketts") established the Foundation and serves as its Chief Executive Officer.

Hugo Enterprises is a limited liability company, owned and funded by Ricketts, with its principal place of business in Denver, Colorado. Hugo Enterprises operates as a holding company for Ricketts's various for-profit businesses, and provides certain administrative services such as accounts payable, accounts receivable, payroll administration, benefits coordination, and some legal and human resources services, to the Foundation and other of Ricketts's charitable enterprises. The Foundation and Hugo Enterprises have separate articles of incorporation, and operating agreements or by-laws. The Foundation files a separate tax return with the Internal Revenue Service, and Hugo Enterprises is a "disregarded entity" for tax purposes, reporting a portion of its expenditures on the schedules of Ricketts's personal tax return. Although the Plaintiffs contend that

---

[2] Unless otherwise specified, the facts recited herein relate to the times relevant to the Plaintiffs' claims. The Court has also considered the Plaintiffs' separate statement of material facts (Pls.' Br., Filing No. 130, at 2-93) and the Defendants' responses thereto (Defs.' Reply Br., Filing No. 138, 36-115).

Hugo Enterprises acted as a holding company for the Foundation, the Plaintiffs cite only to Ricketts's deposition at 25:13-26-26:12 and 28:11-19 in support of that contention. Ricketts's deposition testimony designated by the Plaintiffs simply notes that Hugo Enterprises provided administrative infrastructure for the nonprofit enterprises funded by Ricketts, keeping books and paying bills. (Filing No. 131-10 at 7.)

ADP TotalSource, Inc. ("ADP"), is a professional employer organization ("PEO"), that provided payroll, human resources, and employee benefits services to the Foundation pursuant to a contractual relationship that began in November 2008.

Davis began working with the Foundation as a volunteer in 2005, and her relationship with the Foundation was governed by a consulting agreement. She assisted in developing educational curriculum and finding teachers and students for educational videos. She also worked with vendors to purchase educational materials to send to schools in developing countries. In August 2007, Davis applied for and was awarded full-time employment with the Foundation as its Director of Education, an "at will" position with an annual salary of $60,000. In December 2008, the Foundation, acting through its C.E.O. Ricketts, terminated Davis's employment, because Ricketts perceived that Davis's divorce from one of the Foundation's vendors was having an adverse effect on Foundation operations. In early 2009, Ricketts conducted a search for candidates to fill the position of Director of Education, and Davis applied for the position. She was rehired on April 1, 2009.

Upon recommendation by Davis, the Foundation contracted with her friend Duncan to work as a consultant for the Foundation beginning in June 2008. Duncan had an M.B.A. and was working toward a Ph.D. in education. She signed a consulting agreement with the

Foundation on June 4, 2008, providing, *inter alia*, that she was an independent contractor, not an employee, and that she was free to contract with and provide services to other companies or organizations.  Duncan helped identify and recruit American schools for the Foundation's sister school pen pal program; worked with new sister schools to set up pen pal relationships with target schools; and served as the point of contract for questions and concerns posed by current and potential sister schools.

In January 2009, Davis told her son, Goergen, that the Foundation needed a contract worker to perform services in its warehouse.  Goergen worked at the Foundation's warehouse from January 2009 to late 2010, packing teaching supplies in boxes to be shipped to target schools in developing nations.  Like Duncan, Goergen signed a consulting contract with the Foundation, agreeing that he was an independent contractor and not an employee of the Foundation.

In the United States, the Foundation employed a total of four employees in 2008; six employees in 2009; and seven employees in 2010.  While the Plaintiffs assert that the Foundation had other employees overseas and in the United States for purposes of Title VII and NFEPA, they cite only to the Deposition of Jayson Graham at 32:1-12 in support of that contention.  (*See* Pls.' Br., Filing No. 130, p. 96, ¶ 21.)  Graham's deposition testimony designated by the Plaintiffs simply notes that, at an unspecified time, the Foundation had one employee in India and one employee in Tanzania. (Filing No. 131-18 at 9.)

Foundation employees reported to and were supervised by the Foundation's management employees. Decisions related to the hiring or firing of Foundation employees, their work schedules and rates of pay, and decisions related to services provided to the

8

Foundation by contractors or consultants, were made by Ricketts as C.E.O. of the Foundation. Although the Plaintiffs contend that Foundation employees were sometimes required to report to Hugo President and General Counsel Alfred Levitt ("Levitt")[3] and Hugo Chief of Staff Mark Simmons ("Simmons"), the Plaintiffs cite only to Ricketts's deposition at 31:6-32:8 in support of that contention. Ricketts's deposition testimony designated by the Plaintiffs does not support their contention. (Filing No. 131-10 at 8.)

Until July 2009, Davis reported to the Foundation's Executive Director Alan Barkley ("Barkley"), who was based in California and typically visited Omaha quarterly. On July 1, 2009, Ricketts hired Michael Morsches ("Morsches") as Chief Operations Officer of the Foundation, and Davis then reported to Morsches. Davis and Duncan questioned Morsches's credentials and his attitude toward women and, in July 2009, they met with Ricketts's brother, Jim Ricketts ("Jim"), a part-time employee of the Foundation, to voice their concerns. Jim relayed the information to Ricketts, and Jim expressed his regret that Davis had been rehired.

After Morsches began work as COO of the Foundation, Davis and Duncan had many criticisms of his work performance and his conduct, and Morsches and Ricketts had many criticisms related to the performance of Davis and Duncan. In mid to late August 2009, Duncan contacted Barkley to discuss Morsches, and made allegations that Morsches engaged in inappropriate sexual conduct. The same day, Barkley called Davis to discuss Morsches, and Davis described conduct by Morsches that she considered to be

---

[3] Levitt was employed by Hugo Enterprises as General Counsel from 2007, and, in 2009, became President of Hugo Enterprises, in addition to serving as General Counsel. In December 2009, Levitt also became Secretary and General Counsel of the Foundation, providing legal counsel and services to both Hugo Enterprises and the Foundation.

9

inappropriate. The same day, Barkley called Simmons and summarized what Davis and Duncan told him. Simmons passed the information along to Levitt, and Levitt called Barkley to discuss the concerns. Levitt then emailed and called Davis to discuss her concerns, asked her to put the concerns in writing, and assured Davis that the Foundation took the complaints seriously and would investigate. Levitt also called Duncan to discuss her concerns, and asked her to put her concerns in writing. On August 24, Davis submitted her written statement to Levitt. On August 25, Duncan submitted her written statement to Levitt. Levitt and Ricketts investigated the complaints.

On August 31, 2009, Ricketts informed Duncan that her services were no longer needed, although Levitt and Ricketts continued to meet with Duncan to review her complaints about Morsches.

Levitt and Ricketts met with Morsches on September 1, 2009, to confront him with the allegations. Morsches responded to the allegations, admitting that he made certain statements and denying others. Ricketts met with both Davis and Morsches on September 4, 2009, and Morsches apologized to Davis and stopped making sexual comments and innuendos at the workplace. Nonetheless, Davis and Morsches continued to have a strained working relationship, with many criticisms of each other's work performance. On November 15 or 16, 2009, Davis called ADP's hotline regarding Morsches's conduct. She then submitted a written statement to ADP, which ADP forwarded to Simmons. In November 2009, Levitt learned that Davis alleged Morsches retaliated against her because of her complaint of harassment, and Levitt referred the matter to an outside law firm for investigation. On November 18, 2009, Ricketts advised Morsches and Davis that they would both be placed on administrative leave pending the completion of the investigation.

An attorney with the law firm conducted an investigation and provided his conclusions to Levitt and Ricketts on December 11, 2009, including his opinion that there had been no unlawful retaliation against Davis and that both Morsches and Davis were contributing to an unproductive atmosphere in the workplace. The attorney also advised Ricketts of several comments made by Davis in her journal that she showed the lawyer, including comments to the effect that she "loathed" Ricketts and lost "every shred of respect" she had for him. Following the December 11, 2009, discussion, Ricketts decided to terminate both Morsches and Davis. Ricketts directed Levitt to communicate to Davis the decision to terminate her employment. On December 16, 2009, the attorney and Levitt called Davis. The attorney explained to Davis the conclusions he reached following his investigation, and Levitt informed Davis of her termination and that the termination was based on her work performance and her view of Ricketts. On December 18, 2009, Ricketts called Morsches and informed him that his employment with the Foundation was terminated.

On December 14, 2010, Graham told Goergen that his services were no longer needed, effective December 16, 2010.

## DISCUSSION

The requirement that a defendant employer have fifteen or more employees is an element of a plaintiff's claim under Title VII and NFEPA. *See* 42 U.S.C. § 2000e(b); Neb. Rev. Stat. § 48-1102(2)[4]; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006). While it is

---

[4] The Nebraska Supreme Court has said, "[b]ecause the NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. §§ 2000e *et seq.* (1976), it is appropriate to look to federal court decisions construing similar and parent federal legislation." *Father Flanagan's Boys' Home v. Agnew*, 590 N.W.2d 688, 693 (Neb. 1999) (quoting *Airport Inn v. Neb. Equal Opp. Comm.*, 353 N.W.2d 727, 731 (Neb. 1984)).

recognized that when "satisfaction of an essential element of a claim for relief is at issue, . . . the jury is the proper trier of contested facts," *id*. at 514, when uncontested facts demonstrate that a plaintiff cannot satisfy an essential element of a claim, summary judgment is warranted.

Here, the Plaintiffs' Title VII and NFEPA claims must be dismissed if the Foundation did not have fifteen or more employees at the times relevant to the Plaintiffs' claims, unless the Plaintiffs can demonstrate that the Foundation and Hugo Enterprises were a joint, consolidated, or integrated employer for purposes of Title VII and NFEPA.

Even if Duncan and Goergen were counted as employees of the Foundation, and not independent contractors, the undisputed evidence shows that the Foundation had fewer than fifteen employees at all times relevant to the Plaintiffs' claims. The Plaintiffs have abandoned their claim that the Foundation and ADP were a joint, consolidated, or integrated employer for purposes of Title VII and NFEPA. No genuine issues of material fact remain for a jury to address with respect to the relationship between the Foundation and Hugo Enterprises. The question is whether the two entities are–or are *not*–a single employer for purposes of Title VII and NFEPA. Four Eighth Circuit decisions guide this Court in making that determination.

In *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 392 (8th Cir. 1977), the Eighth Circuit announced that several factors should be considered when determining whether entities should be viewed as a consolidated employer for purposes of Title VII: Interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. Because the legal standard was newly adopted, the Eighth Circuit remanded the matter to the district court for further proceedings.

In *Artis v. Howell,* 161 F.3d 1178, 1184 (8th Cir. 1998), the Eighth Circuit noted that all four factors listed in *Baker* are to be considered, with no one factor controlling. Based on the "totality of the circumstances," the Eighth Circuit held that the district court correctly concluded that an employer should not be consolidated with an associated entity to meet Title VII's employee numerosity requirement, despite some common management and some overlap in the entities' control of labor relations. The district court's grant of summary judgment for the defendant employer was upheld.

In *Brown v. Fred's Inc*., 494 F.3d 736, 739 (8th Cir. 2007), the plaintiff suggested that her employer and its parent company should be viewed as a single entity to satisfy Title VII's employee numerosity requirement. The parent company processed payroll and performed other services for its subsidiary, the plaintiff's employer. The parent company's name appeared on the plaintiffs' payroll checks and other documents, such as the employee handbook. The manager who hired the plaintiff thought he worked for the parent company and that the two companies were one and the same. The Eighth Circuit held that the "strong presumption that a parent company is not the employer of its subsidiary's employees" may be overcome "only in extraordinary circumstances." *Id*. (quoting *Frank v. U.S. West, Inc*., 3 F.3d 1357, 1362 (10th Cir. 1993)) (citing *Johnson v. Flowers Indus. Inc.*, 814 F.2d 978, 981 (4th Cir. 1987)). Without addressing the *Baker* factors, the court concluded that a parent company may be viewed as the employer of its subsidiary's employees for purposes of the Title VII numerosity requirement "if (a) the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer, or (b) the parent company is linked to the alleged discriminatory action because it controls individual employment decisions." *Id*. (internal citations and quotation marks

13

omitted).  The *Brown* court found that the plaintiff's evidence of interrelation of corporate operations was insufficient to create a genuine issue for trial with respect to "either circumstance" (the parent company's domination or its link to the alleged discriminatory action).  *Id*. at 739-40.  The district court's entry of summary judgment for the defendants on the plaintiff's Title VII claim was affirmed.  *Id*. at 740.

In *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 796 (8th Cir. 2009), the Eighth Circuit "harmonized" its earlier decisions by holding that the four *Baker* factors should be considered to determine "corporate dominance over a subsidiary's operations and establish affiliate liability."  Although the *Sandoval* court was addressing general principals of corporate liability under Title VII, and not the employee numerosity requirement, its analysis provides guidance.  The *Sandoval* court found that "evidence of common ownership and management of [the parent and subsidiary]; [the parent's] involvement, pursuant to [a service agreement], in several areas of [the subsidiary's] operations; and [the parent's] public representations of centralized corporate control of labor and human resources, demonstrate [the parent] is the [plaintiff's] employer for purposes of the integrated enterprise test."  *Id*. at 795-96.  Accordingly, the Eighth Circuit reversed the district court's entry of summary judgment on the issue of whether the parent corporation and its subsidiary were an "integrated enterprise" under Title VII.  *Id*. at 800.

Here, Hugo Enterprises is not a parent corporation to the Foundation, and the Foundation is not its subsidiary.  The Foundation is a charitable, non-profit organization that has observed the requisite tax-exempt corporate formalities.  Here, as in *Brown,* the non-employer company (Hugo Enterprises) processed payroll and performed other services for the employer company (the Foundation).  Here, as in *Artis,* there was some

common management and some overlap in the entities' control of labor relations, in that Ricketts was the final decision-maker in both entities and he enlisted the assistance of Levitt, Hugo's General Counsel, to assist in the investigation of Davis's and Duncan's complaints.[5] Nonetheless, the Plaintiffs reported to managers employed by the Foundation; they ultimately were accountable to Ricketts as C.E.O. of the Foundation; and there is no evidence that any Plaintiff at any time performed any services for Hugo Enterprises. Considering the four *Baker* factors–interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control–under the totality of the circumstances and with no one factor controlling, this Court concludes that Hugo Enterprises did not so dominate the Foundation's operations that the two were one entity and one employer. Nor is there evidence that Hugo Enterprises was linked to the alleged discriminatory actions by controlling individual employment decisions. There *is* evidence that one man–Joe Ricketts–exercised ultimate decision-making authority for both Hugo Enterprises and the Foundation.

It is recognized that Title VII "is to be accorded a liberal construction in order to carry out the purposes of Congress[.]" *Baker*, 560 F.2d at 391 (quoting *Parham v. Sw. Bell Tel.*, 433 F.2d 421, 425 (8th Cir. 1970)). "Such liberal construction is also to be given to the definition of 'employer.'" *Id*. It is also recognized that Congress did not intend for Title VII to be applied to employers with fewer than fifteen employees, nor did the Nebraska legislature intend for NFEPA to be applied to such employers. One person's exercise of ultimate control over two otherwise distinct corporate entities is insufficient to overcome the

---

[5] The Court finds evidence of Simmons's involvement in the chain of events to be inconsequential, as he was not a decision-maker and it appears that he simply passed along information that was relayed to him.

strong presumption of their corporate separateness and cause the two entities to be viewed as a joint, consolidated, or integrated employer for purposes of satisfying Title VII's and NFEPA's employee numerosity requirements.

**CONCLUSION**

At all times relevant to the Plaintiffs' claims, the Foundation had fewer than fifteen employees. No genuine issues of material fact remain for a jury to decide regarding the relationship between the Foundation and Hugo Enterprises as alleged joint, consolidated, or integrated employers. This Court concludes they are not. Because the Plaintiffs cannot satisfy an essential element of their actions under Title VII and NFEPA, *i.e.*, that the Foundation was an "employer" as defined in Title VII and NEFPA, summary judgment will be granted in favor of the Defendants and the Plaintiffs' claims will be dismissed.

Accordingly,

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 102) is granted;

2. The Plaintiffs' Motion for Partial Summary Judgment (Filing No. 105); the Defendants' Motions in Limine (Filing No. 141); the Plaintiffs' Motion in Limine to Exclude Testimony and other Evidence Regarding Matters Defendants Claimed are Protected by the Attorney-Client Privilege & Work Product Doctrine (Filing No. 148); the Plaintiffs' Motion in Limine to Exclude Testimony and Other Evidence Regarding Unemployment Benefits and Moonlighting Income (Filing No. 151); the Plaintiffs' Motion in Limine to Exclude Evidence Regarding Bankruptcy and Criminal Charges (Filing No. 154); the Plaintiffs' Motion in Limine to Exclude Irrelevant Communications Regarding Plaintiff Patricia Davis' Diary (Filing No. 157); and

Plaintiffs' Motion in Limine to Exclude Witnesses Pursuant to F.R.E. 615 (Filing No. 159) all are denied as moot;

3. All other pending motions are denied as moot; and

4. A separate Judgment will be entered.

DATED this 5th day of June, 2013.

BY THE COURT:

S/Laurie Smith Camp
Chief United States District Judge